UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION OF MARIA CLAUDIA BELDI, MARIA INES BELDI, AND ANTONIO FABIO BELDI TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING UNDER 28 U.S.C. § 1782 | Case No. |

### *EX PARTE* APPLICATION OF MARIA CLAUDIA BELDI, MARIA INES BELDI, AND ANTONIO FABIO BELDI TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING UNDER 28 U.S.C. §1782
### AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Based upon the Declaration of Felipe Silva Vieira ("Vieira Decl.") and the exhibits attached thereto, the declaration of Alexander H. Shapiro ("Shapiro Decl.") and the exhibits attached thereto, and the incorporated Memorandum of Law in support of this Application, Maria Claudia Beldi, Maria Inês Beldi, and Antonio Fábio Beldi (collectively "Applicants") hereby move the Court to grant this Application pursuant to 28 U.S.C. § 1782: (i) authorizing the Applicants to serve the Federal Reserve Bank of New York ("Federal Reserve Bank"), The Clearing House Payments Company LLC ("The Clearing House"), Citibank N.A., Deutsche Bank AG, HSBC Bank (USA) NA, JP Morgan Chase Bank N.A., Standard Chartered Bank, and The Bank of New York Mellon (collectively "Subpoena Recipients") with the subpoenas attached as Exhibits A-H to the Shapiro Declaration; and (ii) directing the subpoena recipients to produce the responsive documents that are in their possession, custody, and control within thirty days of service.

**JURISDICTION AND VENUE**

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a). Venue in this District is proper under 28 U.S.C. § 1391 because the intended subpoena recipients are found in this District. The Federal Reserve Bank of New York is located at 33 Liberty Street, New York, NY 10045. *See* Shapiro Decl. ¶ 11, Ex. I. The Clearing House Payments Company LLC is located at 1114 Avenue of the Americas, 17th Floor, New York, NY 10036. *Id*. ¶ 12, Ex. J. Citibank N.A. is located at 388 Greenwich Street, New York, New York, 10013. *Id*. ¶ 13, Ex. K. Deutsche Bank AG is located at 1 Columbus Circle, New York, New York 10019. *Id*. ¶ 14, Ex. L. HSBC Bank (USA) NA is located at 66 Hudson Blvd E, New York, New York 10001. *Id*. ¶ 15, Ex. M. JP Morgan Chase Bank N.A. is located at 270 Park Avenue, New York, New York 10017. *Id*. ¶ 16, Ex. N. Standard Chartered Bank is located at 1095 6th Avenue New York, New York 10036. *Id*. ¶ 17, Ex. O. The Bank of New York Mellon is located at 240 Greenwich Street, New York, New York 10286. *Id*. ¶ 18, Ex. P.

**FACTUAL BACKGROUND**

Applicants seek discovery for use in a disputed probate proceeding currently pending in São Paulo, Brazil, for the estate of Alexandre Beldi Netto ("Alexandre"). Vieira Decl. ¶ 6. Born in 1920, Alexandre was a prosperous and prominent figure in Brazil, having founded Grupo Splice, a group of nearly 80 private companies that specialize in strategic and engineering technologies, real estate services, infrastructure, and education. *Id*. ¶ 7.

Alexandre passed away intestate in Brazil on March 1, 2010, and was survived by his wife, Heloisa Wey Beldi ("Heloisa Wey"), and eight children: Claudia, Inês, Maria de Lourdes Beldi ("Lourdes"), Antonio Roberto Beldi ("Antonio Roberto"), Marco Antonio Beldi ("Marco"), Fábio, Maria Teresa Beldi Souza ("Teresa"), and Maria Heloisa Beldi ("Maria Heloisa"). *Id*. ¶ 8.



*Alexandre's Vast Estate*

Alexandre's estate consisted of shares in dozens of companies, bank accounts, real estate, and other assets collectively worth more than USD $50,000,000. *Id.* ¶ 9. According to his tax returns and other information, Alexandre owned shares directly and indirectly in many of the companies that make up Grupo Splice, including (i) Tolvi Participações S.A., the main holding company of Grupo Splice, (ii) Splice do Brasil - Telecomunicações e Eletrônica S.A., (iii) Splice do Brasil - Telecomunicações e Eletrônica Ltda., (iv) Selte Serviços Elétricos Telefônicos Ltda., (v) CSM Cartões de Segurança Ltda., (vi) Santana Participações Ltda., (vii) Santana Participações S.A., (viii) Morus Educacional Participações S.A., (ix) Morus Empreendimentos Imobiliários Ltda., (x) Sapoti Empreendimentos Imobiliários S.A., (xi) Ficus Empreendimentos Imobiliários Ltda., (xii) Agro Pecuária Beldi Ltda., (xiii) Credibel Holding Financeira S.A., (xiv) Credibel Corretora de Seguros S.A., (xv) Banco Credibel S.A., (xvi) Calas Participações Ltda., and (xvii) Beldi Comercio Participações e Representações Ltda. *Id.* ¶ 10.

Alexandre also owned extensive and valuable assets outside of Brazil, including in the United States, Uruguay, and the Bahamas. *Id.* ¶ 11. These assets include ownership interests in Belan Limited, Camargan Investments Limited, Camden Group Investments Limited, Farringdon Investments Limited, Freegold S.A., Wendee Inc. *Id.* Many other entities are relevant to Alexandre's estate, including companies that Alexandre owned indirectly, companies that received assets from or sent assets to Alexandre's companies, and companies that held properties likely acquired with Alexandre's assets. *See id.* ¶ 12. These entities include Bayham Holdings LLC, Brookline Investments Ltd., Chatterton Management Group Limited, Delacroix Limited, Dean Court Limited, and Dresden Group O&G Mgt. Ltd. *Id.*

Numerous entities affiliated with Alexandre—such as Pacific Bank Limited, Kennington Limited/Kennington Fund Limited, Strutton Fund Limited, Wendee Inc., and Wivenhoe Holdings Limited—had or have accounts in U.S. banks. *Id.* ¶ 13.

### *The Brazilian Probate Proceedings*

On April 7, 2010, Alexandre's sons initiated a probate proceeding in Brazil, which is still pending before the Honorable Judge Leonardo Aigner Ribeiro of the 4th Family and Succession Court of the Central District of São Paulo, case number 0013437-56.2010.8.26.0100 (the "Brazilian Proceeding"). *Id.* ¶ 14. Heloisa Wey was unable to serve as the administrator of Alexandre's estate because of her medical condition, and the Court appointed Luiz Rosati to serve as the administrator. *Id.* ¶ 15.

In his capacity as administrator, Rosati filed an inventory of the decedent's estate on June 16, 2010. *Id.* ¶ 16. This inventory did not contain information about assets held outside of Brazil, despite the fact that there is ample evidence that Alexandre owned companies outside of Brazil, at

times sharing ownership interests and management responsibilities in those foreign companies with certain of his children. *Id*.

### *Brazilian Law on* Inter Vivos *Gifts*

Under Brazilian law, the inventory must account for all assets held by the deceased at the time of the death. *Id*. ¶ 17. Moreover, Brazilian law requires heirs to declare all gifts ("colação") they received during the decedent's lifetime because these gifts are considered an advance of the heir's inheritance. *Id*. Brazilian law, therefore, provides that an heir's share of the estate must be reduced by *inter vivos* gifts. *Id*. The non-disclosure of such a gift subjects the heir to legal penalties, including potential forfeiture of their inheritance. *Id*.

Evidence in the Brazilian probate proceedings indicates that at least some of the Beldi heirs received *inter vivos* gifts and had management responsibilities for entities belonging to Grupo Splice. *Id*. ¶ 18. In particular, Alexandre's son Antonio Roberto declared that he should carry out the administration of the estate as he has "effective possession and administration of the Estate's assets and [is] ultimate[ly] responsible for the business group in which the deceased participated." *Id*. Alexandre's other sons also had significant ownership interests in several entities belonging to Grupo Splice. *Id*. ¶ 19.

### *The Missing Assets*

As the inventory did not include foreign accounts and financial investments held by Alexandre at the time of his death, Claudia, Inês, and Lourdes advised the Brazilian court that they believed those assets had not been disclosed. *Id*. ¶ 20.

In or about 2014, Fabio, Ines, and Heloisa engaged a certified public accountant and certified fraud examiner to review and analyze financial and corporate documents relating to the estate; trace the funds, securities, and other assets of the assets being held outside of Brazil; and

5

identify financial institutions that may have information relating to the movement of funds, securities, and other assets belonging to the estate. *Id*. ¶ 21. The forensic accountant found that Alexandre had an ownership interest in numerous international businesses domiciled in Delaware, the Bahamas, Antigua, and Barbuda and that those businesses had bank and/or brokerage accounts outside of Brazil, including at several banks in Miami, Florida, such as Banco Santander International, Coutts (USA) International, HSBC Private Bank International, and American Express Bank International (now Standard Chartered Bank). *Id*. Furthermore, the forensic accountant found that as late as February 2012, the companies she identified held significant assets in bank and brokerage accounts in the United States but was unable to trace them. *Id*. She was similarly unable to trace the disposition of cash and securities that reflected significant balances in February 2012. *Id*.

As examples, the forensic accountant explained that she had reviewed audited financial statements for Pacific Bank Limited which reflected more than $100,000,000 in assets and more than $40,000,000 of shareholders' equity at the end of 2000. *Id*. ¶ 22. She also reviewed financial statements for Strutton Fund Limited which reflected more than $43,000,000 in assets. *Id*. Those assets remain unaccounted for. *Id*.

### *Current Status of Brazilian Proceedings*

Mr. Rosati served as the administrator until October 2015, when the Brazilian Court replaced him with Guilherme Sant'anna. On January 15, 2016, Alexandre's wife, Heloisa Wey, passed away. *Id.* at ¶ 23. Upon her death, the Brazilian Court authorized the joint administration of the probate and partition of both Alexandre's and Heloisa Wey's estates. *Id*.

The Brazilian proceeding continues to be heavily litigated, and at least two critical issues remain to be established: (1) whether any of the heirs received any gifts of assets before

Alexandre's death; and (2) whether any assets held outside of Brazil, including in the United States, were omitted from the inventory. The purpose of this Section 1782 petition is to assist the heirs in finding answers to these questions.

### *Prior Section 1782 Petition in the Southern District of Florida*

Claudia and Lourdes originally filed an application for discovery under Section 1782 in the Southern District of Florida on January 13, 2011, seeking information about assets in the United States. *In re Application of Maria Claudia Beldi, Maria Inês Beldi, and Maria de Lourdes Beldi*, No. 1:11-mc-20131-DLG, (S.D.F.L. Jan. 13, 2011) ECF No. 1. The Honorable Donald L. Graham granted the application on March 18, 2011, and authorized the issuance of subpoenas to several financial institutions in the Southern District of Florida for information concerning accounts or financial investments held by Alexandre in his name or in the name of corporations of other legal entities, accounts or financial investments in which he had any interest. *Id.*, ECF No. 3. This request referenced notices for information that the Brazilian court had previously authorized. On April 5, 2011, Antonio Roberto, Marco Antonio, Antonio Fabio, and Maria Teresa move to vacate the order and to quash the subpoenas, arguing that the Brazilian Court had erred in issuing those notices and stating that the Brazilian court had stayed the notices pending confirmation of relevant financial institutions by the estate administrator. *Id.*, ECF No. 4. On April 14, 2011, the Court entered an order on consent granting a stay of discovery, pending the Court's resolution of the motions to quash. *Id.*, ECF 12. Then on May 19, 2011, Heloisa, Alexandre's daughter, also moved to intervene and quash the subpoenas. *Id.*, ECF No. 21. Subsequently, the court allowed several extensions for additional briefing, but there has been no docket activity since July 17, 2012. Counsel for the Applicants has sought to determine the current status of the Brazilian court's original notices for information but to date has been unable to do so.

7

**REQUESTED DISCOVERY**

For use in the Brazilian Proceedings, Applicants now seek discovery from two wire-transfer clearing houses located in this district—the Clearing House, which owns and operates CHIPS, and the Federal Reserve Bank, which operates the Fedwire Funds Service ("FFS")—and six intermediary banks.

FFS is the "premier electronic funds-transfer service that banks, businesses and government agencies rely on for mission-critical, same-day transactions."[1] FFS handles a significant volume of time-critical payments through bank-to-bank transfers and third-party transfers that are used for a range of payments from end-of-day settlement transactions to loan closings and tax payments.[2] As an example, in 2022, FFS "processed an average daily volume of 784,209 transactions, with a daily average value of about $4.2 trillion, and an average transfer value of about $5.41 million."[3] FFS also handles "nonvalue messages … such as requests to reverse a transfer, to draw down a line of credit, or to inquire about or provide additional information in connection with earlier transfer messages."[4]

CHIPS "is the largest private sector clearing system in the world for U.S. dollars, clearing and settling $1.8 trillion in domestic and international payments per day."[5] According to CHIPS, its "network is the premier USD clearing and settlement system for international payment activity, with 95% of CHIPS payments being the USD leg of a funds transfer that begins or ends in another

---

[1] Fedwire Funds Service, https://www.frbservices.org/financial-services/wires, last accessed September 4, 2024.
[2] Fedwire Funds Service Disclosure, 5-6 (December 1, 2023), https://www.frbservices.org/binaries/content/assets/crsocms/financial-services/wires/funds-service-disclosure.pdf (last visited September 4, 2024).
[3] *Id*.
[4] *Id*.
[5] https://www.theclearinghouse.org/payment-systems/CHIPS (last accessed September 4, 2024).

8

country…."[6]

Together, CHIPS and FFS constitute the primary network in the United States for domestic and foreign large transactions denominated in U.S. dollars, and therefore would very likely have processed and settled transfers between and among the Grupo Spice companies. With the purpose of finding assets that belong to the Estate and identifying *inter vivos* gifts to certain heirs, the proposed subpoenas to The Clearing House and the Federal Reserve Bank (attached as Exhibits A and B to the Shapiro declaration) seek "[a]ll documents and communications relating to any payment, transaction, transfer, conveyance, wire, debit, credit, payment messages, and/or payment orders to, from, for the benefit of, on behalf of, or at the request of" certain individuals and entities named in the subpoena.

Citibank N.A., Deutsche Bank AG, HSBC Bank (USA) NA, JP Morgan Chase Bank N.A., Standard Chartered Bank, and The Bank of New York Mellon (the "Intermediary Banks") are commonly known as intermediary or correspondent banks as they are financial institutions that act as intermediaries for transfers of funds between banks. Shapiro Decl. ¶ 11 —18. The proposed subpoenas to the Intermediary Banks (attached as Exhibits A through H to the Shapiro Declaration) also seek "[a]ll documents and communications relating to any payment, transaction, transfer, conveyance, wire, debit, credit, payment messages, and/or payment orders to, from, for the benefit of, on behalf of, or at the request of" certain individuals and entities named in the subpoena.

## LEGAL STANDARD

Congress enacted Section 1782 "to provide equitable and efficacious discovery for use in

---

[6] https://www.theclearinghouse.org/payment-systems/Articles/2024/04/CHIPS_Network_Migrates_ISO_20022_04-10-2024#:~:text=The%20CHIPS%20network%20is%20the,an%20ISO%2020022%20message%20format (last accessed September 4, 2024).

foreign and international proceedings," *In re Edelman*, 295 F.3d 171, 173 (2d Cir. 2002), and to "encourage[e] foreign countries by example to provide similar means of assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252. To this end, Section 1782 allows a "broad range of discovery" and assistance. *Intel*, 542 U.S. at 259-262 (2004); *see In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (Section 1782's "liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"). Indeed, since it was first enacted in 1855, Congress has revised the statute on several occasions—each time expanding the scope of permissible discovery. *See Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ([T]he statute has, over the years, been given increasingly broad applicability.").

In pertinent part, 28 U.S.C. § 1782(a) provides:

> The district court of the district ***in which a person resides or is found*** may order him ***to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal***, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or ***upon the application of any interested person*** and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a) (emphasis added).

In short, there are three statutory requirements: (1) the target of the discovery either resides or is found in the district where the application is filed; (2) the discovery sought is for use in foreign

proceedings before a foreign tribunal; and (3) the party seeking discovery is an "interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

Once the district court determines that these statutory requirements are met, the Court "is free to grant discovery in its discretion." *Id*. In exercising its broad discretion, the district court may consider the so-called *Intel* factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264–65.

## ARGUMENT

### A. The Application satisfies all statutory requirements.

#### 1. The Federal Reserve Bank, the Clearing House, and the Intermediary Banks are "found" in the Southern District of New York.

The scope of Section 1782's "found in" requirement "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019). Federal courts have general jurisdiction over a corporation that is "at home" in the forum, and a corporation is generally "at home" in the forum in which it is incorporated or in which the corporation has its principal place of business. *See Gucci Am., Inc. v. Li*, 768 F.3d 122, 125 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n. 19.)

The subjects of discovery here—the Federal Reserve Bank, the Clearing House, and the Intermediary Banks—are all "found" in this district. The Federal Reserve Bank and The Clearing House have their principal place of business in New York City. Shapiro Decl. ¶ ¶11,12, Ex. I, J; *see In re Ibiuna Crédito Gestão de Recursos Ltda.*, No. 24 Misc. 13 (JGK) (RFT), 2024 WL 1077559, at *4 n.4 (S.D.N.Y. Feb. 14, 2024), *adopted* 2024 WL 1076940 (S.D.N.Y. Mar. 11, 2024) (Federal Reserve Bank and the Clearing House are found in this District because publicly available information confirms they are headquartered here); *Ex parte Abdalla*, No. 20 Misc. 727 (PKC), 2021 WL 168469, at *3 (S.D.N.Y. Jan. 19, 2021) (Federal Reserve Bank and the Clearing House are found or reside in this district).

Similarly, the Intermediary Banks are all "found" in this district. *See In re W. Afr. Min. Trading Ltd.*, No. 24 MISC. 114 (DEH), 2024 WL 3862293, at *2 (S.D.N.Y. Aug. 19, 2024) (finding that Citibank N.A., Deutsche Bank AG, HSBC Bank (USA) NA, JP Morgan Chase Bank N.A., The Bank of New York Mellon Corporation, and UBS "are each headquartered and/or have their principal place of business in New York"); *In re Litasco SA*, No. 23-MC-354 (AS), 2023 WL 8700957, at *1 (S.D.N.Y. Dec. 15, 2023) (finding general jurisdiction over The Bank of New York Mellon, Citibank N.A., HSBC Bank (USA) N.A., JP Morgan Chase Bank N.A., and Standard Chartered Bank because each bank is either "incorporated in New York or [has] its principal place of business here.")

### 2. The requested discovery is for use in a foreign proceeding before a foreign tribunal.

The requirement that discovery be "for use in a proceeding in a foreign or international tribunal" turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc. (Euromepa II)*, 154 F.3d 24, 27 (2d Circ. 1998). A "tribunal" under Section 1782 indisputably includes courts. *Matter of*

*Application for an Ord. Seeking Discovery Under 28 U.S.C. § 1782*, 2024 WL 2883293, at *4; *see, e.g., Consorcio Ecuatoriano*, 747 F.3d at 1270–71 (proceedings in the courts of a foreign country constitute "foreign proceeding"); *Intel*, 542 U.S. at 259 ("foreign proceeding" includes civil case before foreign court). And to satisfy the "for use" prong, the evidence need only be relevant to the foreign proceeding. The evidence need not actually, or even probably, be discoverable or admissible in the foreign proceeding. *See Brandi-Dohrn*, 673 F.3d at 80–81.

Here, there is a proceeding underway in a probate court in Brazil that is adjudicative in nature, and the discovery that Applicants seek—to identify estate assets outside Brazil and any potential *inter vivos* gifts—is of direct relevance to the Brazilian Proceedings to establish that significant assets and gifts have not been disclosed in the inventories submitted to the Brazilian court.

### 3. Applicants are "interested persons."

An "interested person" under Section 1782 includes a party to the foreign litigation. *Intel*, 542 at 256. ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.") As heirs, Applicants are parties in the Brazilian Proceeding. Vieira Decl. ¶ 25. There is "no doubt," therefore, that Applicants are "interested persons" within the meaning of Section 1782.

### B. The Intel discretionary factors weight strongly in favor of granting the Application.

#### 1. The Federal Reserve Bank, the Clearing House, and the Intermediary Banks are not participants in the Brazilian Proceedings.

Under the first discretionary factor set out in *Intel*, the Court considers whether the anticipated recipients of the subpoenas are themselves parties to or otherwise participants in the foreign proceeding. As the Supreme Court reasoned, "nonparticipants in the foreign proceeding may be

outside of the foreign tribunal's reach; hence their evidence, available in the United States, may be unobtainable absent 28 U.S.C. §1782(a) aid." *Intel*, 542 U.S. at 264. A subpoena target's "status as a non-party in the foreign action weighs in favor of granting [the] application." *In re Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in Norway*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008). Since the Federal Reserve Bank, the Clearing House, and the Intermediary Banks are not, and are not likely ever to be, parties or participants in the Brazilian Proceedings (Vieira Decl. ¶ 26), the first discretionary factor strongly weighs in favor of granting the application.

### 2. The nature of the Brazilian Court, the character of the Brazilian Proceedings, and the receptivity of the Brazilian Court weigh in favor of granting the application.

The Court should find in favor of discovery absent a "clear directive"—based on "authoritative proof"—from a judicial, executive, or legislative authority in the foreign jurisdiction that specifically rejects the use of evidence gathered from abroad. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Here, not only is there no such clear evidence, but, to the contrary, there is every reason to believe that the Brazilian court will be receptive to judicial assistance from the United States. Vieira Decl. ¶ 28. Indeed, courts in this District and elsewhere have permitted discovery under Section 1782 for use in Brazilian proceedings, signaling the receptivity of Brazilian courts. *See, e.g., In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery From the Clearing House Payments Company LLC and the Federal Reserve Bank of New York*, 20-msc-203 (granting Section 1782 discovery for use in Brazilian probate proceedings); *In re de Aquino Chad*, No. 19-mc-261, 2019 U.S. Dist. LEXIS 100483, 2019 WL 2502060, at *4 (S.D.N.Y. Jun. 17, 2019) (granting Section 1782 discovery on financial

institutions for use in Brazilian proceeding); *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1034 (N.D. Ill. 2006) (granting Section 1782 discovery for use in a Brazilian proceeding before a Brazilian labor court); *see also In re De Melo Pimenta*, 942 F. Supp. 2d, 1282, 1287 (S.D. Fla. 2013) (granting Section 1782 discovery for use in Brazilian Proceeding involving a dispute over a will probated in Sao Paulo). In short, the second discretionary factor weights strongly in favor of granting the application.

### 3. The Application does not attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.

The third factor concerns whether the Section 1782 application represents an "attempt to circumvent foreign proof-gathering restrictions or other policies." *Intel*, 542 U.S. at 265. This is not a requirement that the applicant have sought such discovery already in the foreign tribunal, nor a requirement that the information is indeed discoverable or admissible. Instead, it is an assessment of potential bad faith or gamesmanship on the party of the applicant. *See In re BM Brazil*, 2024 WL 555780, at *12; *In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *In re Refineria de Cartagena, S.A.S.*, 2024 WL 95056, at *10-11 (S.D.N.Y. Jan. 8, 2024).

The Applicants seek assistance from the Court in good faith and do not seek to circumvent prior rulings of the Brazilian court barring discovery or use of such information as is sought in this application. Vieira Decl. ¶ 29. The third discretionary factor, therefore, also weighs in favor of granting the Application.

### 4. The discovery requests are not unduly intrusive or burdensome.

Section 1782 provides that discovery taken under the statute is governed by the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a). Thus, the Court "should assess whether the

15

discovery sought is overbroad or unduly burdensome by applying the familiar standards or Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Under Rule 26, parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also See In re MTS Bank*, No. 17- 21545-MC, 2017 WL 3155362, at *11 (S.D. Fla. July 25, 2017) (Section 1782 discovery requests not unduly burdensome or intrusive where relevant to foreign proceeding and limited in temporal scope).

Applicants seek documents and information that are plainly relevant. As set forth in detail above, Applicants seek discovery about assets outside of Brazil and *inter vivos* gifts that were not disclosed in the Brazilian Proceedings. In addition to being relevant, the requested discovery is unlikely to be unduly burdensome to the Subpoena Recipients as Applicants only seek documents and information regarding wire transfers made by a limited set of individuals and entities. Moreover, the Federal Reserve Bank, the Clearing House, and the Intermediary Banks maintain and produce these types of records in the regular course of business. *See, e.g.*, Order, *In re Catalyst Managerial Services, Dmcc*, No. 1:15-mc-408 (S.D.N.Y. Feb. 26, 2016), ECF. NO. 6 (granting Section 1782 discovery from the Clearing House); Order, *In Re Application of de Araujo Bertolla*, No. 1:17-mc-284 (S.D.N.Y. Nov. 13, 2017) (same); Order, *In Re Cooperatieve Rabobank U.S. et al*, 1:20-mc-89, ECF No. 11 (S.D.N.Y. Feb. 18, 2020) (same); Order, *In the Matter of the Ex Parte Application of Andrew Reginald Yeo and Gess Michael Rambaldi*, 1:18-mc-483, ECF No. 6 (S.D.N.Y. Nov. 1, 2018) (granting Section 1782 discovery from the Federal Reserve Bank); *In re W. Afr. Min. Trading Ltd.*, 2024 WL 3862293, at *2 (S.D.N.Y. Aug. 19, 2024) (granting Section 1782 discovery from Citibank N.A., Deutsche Bank AG, HSBC Bank (USA) NA, JP Morgan Chase Bank N.A., The Bank of New York Mellon Corporation, and UBS); *In re Litasco SA*, 2023 WL 8700957, at *1 (granting Section 1782 discovery from The Bank of New York Mellon,

Citibank N.A., HSBC Bank (USA) N.A., JP Morgan Chase Bank N.A., and Standard Chartered Bank).

For these reasons, the fourth discretionary factor weighs in favor of granting the Application.

### C. *Ex parte* relief is customary and appropriate in Section 1782 cases.

District courts may and "routinely" do resolve Section 1782 applications through *ex parte* proceedings. *In re Zarzur*, 2024 WL 81517, at *1 (S.D.N.Y. Jan. 8, 2024); *see, e.g., In re Ernesto Andrade Grp.*, No. 23MISC424VSBGWG, 2024 WL 195568, at *2 (S.D.N.Y. Jan. 18, 2024) ("the Second Circuit has recognized the appropriateness of granting applications under section 1782 *ex parte*"); *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2002) (summary order) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *Esses v. Hanania*, 101 F.3d 873, 874 (2d Cir. 1996). Accordingly, Applicants respectfully request that the Court grant the Application *ex parte*.

### CONCLUSION

For the reasons set forth above, the Applicant respectfully requests that this Court (i) grant this Application on an *ex parte* basis pursuant to 28 U.S.C. § 1782; (ii) authorize the issuance of the subpoenas attached to the Declaration of Alexander Shapiro; (iii) order the Subpoena Recipients to respond to the subpoenas within thirty days of service of their respective subpoenas; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: September 10, 2024                By: /s/ Alexander H. Shapiro
                                                                       Alexander H. Shapiro
                                                                       ashapiro@fordobrien.com
                                                                       N.Y. Bar No. 2466225
                                                                       Ford O'Brien Landy LLP
                                                                       275 Madison Avenue
                                                                       Floor 24
                                                                       New York, NY 10016
                                                                       (212) 858-0040

                                                                       *Attorneys for the Applicant*