UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

EX PARTE APPLICATION OF MARIA
CLAUDIA BELDI, MARIA INES BELDI, AND
ANTONIO FABIO BELDI TO TAKE
DISCOVERY FOR USE IN A FOREIGN
PROCEEDING UNDER 28 U.S.C. § 1782

24-MC-421 (VEC)

OPINION & ORDER

---

VALERIE CAPRONI, United States District Judge:

Antônio Roberto Beldi, Marco Antônio Beldi, Maria Theresa Beldi de Souza, Thais Barros Beldi, and various business entities that one or a combination of these individuals control (collectively, the "Intervenors") moved (1) to vacate the Court's order granting an *ex parte* application for judicial assistance pursuant to 28 U.S.C. § 1782 brought by their siblings, Maria Claudia Beldi, Maria Inês Beldi, and Antônio Fábio Beldi (collectively, the "Applicants"), and (2) to quash the eight subpoenas that were issued pursuant to that order. *See* Sept. 23, 2024, Order Granting Petition for Discovery Pursuant to 28 U.S.C. § 1782, Dkt. 5; Mot. to Vacate and Quash, Dkt. 9 (the "Motion" or "Mot.")). The Applicants opposed.[1] *See* Applicants' Opp. to Mot., Dkt. 23. Magistrate Judge Figueredo issued a well-reasoned report and recommendation advising the Court to deny the Motion. *See* Report & Recommendation, Dkt. 55 (the "R&R"). The Intervenors objected to the R&R. *See* Objections to R&R, Dkt. 56 ("Objs."). The Court ADOPTS the R&R in full and DENIES the Motion.

---

[1] A separate faction of siblings, Maria Heloísa Beldi and Maria de Lourdes Beldi (the "Supporting Intervenors"), intervened after the Motion was filed. *See* Nov. 19, 2024, Order, Dkt. 16. The Supporting Intervenors opposed the Motion concurrently with the Applicants. *See* Supporting Intervenors' Opp. to Mot., Dkt. 30.

**BACKGROUND**

The Court assumes the parties' familiarity with the R&R, and refers to its Background Section for a detailed factual and procedural overview. *See* R&R at 2–8. For clarity and consistency, the Court adopts the defined terms set forth in the R&R.

**DISCUSSION**

I.      **Legal Standard**

A.      **Section 1782**

In order to grant an application to take discovery pursuant to 28 U.S.C. § 1782, the Court must find that "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up). The statute further requires that the materials requested not be "in violation of any legally applicable privilege." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)).

If the statutory requirements are met, the question whether to grant a Section 1782 is left to the district court's discretion. The Supreme Court has identified four factors (the "*Intel* factors") for courts to consider in exercising such discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782

application contains unduly intrusive or burdensome discovery requests. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).

### B.    Reviewing Objections to a Report & Recommendation

In reviewing a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Where no party objects to a portion of the R&R, the Court may accept it so long as "there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); Fed. R. Civ. P. 72(b) advisory committee's note.

## II.    The R&R is Adopted in Full

The Intervenors do not object to Magistrate Judge Figueredo's recommendation that this Court find that the first and third statutory requirements have been satisfied. The Court finds no clear error in, and agrees with, those recommendations. The Intervenors do, however, object to Magistrate Judge Figueredo's recommendation that this Court find the second statutory requirement has been satisfied and to her recommendation that this Court find that the four *Intel* factors favor granting the application. The Court reviews those portions of the R&R *de novo*.

### A.    The Second Statutory Requirement Has Been Met and the Second and Third *Intel* Factors Favor Granting the Application

The Intervenors' argument that the second statutory requirement has not been met and their arguments that the second and third *Intel* factors favor denying the application are materially similar. *See* Objs. at 11–19, 24–25. The Court, therefore, considers those arguments in tandem.

3

To satisfy the second statutory requirement of Section 1782, the discovery sought by the Applicants must be "for use in a proceeding before a foreign tribunal." *Kiobel*, 895 F.3d at 243 (quoting 28 U.S.C. § 1782(a)). Courts in this circuit have adopted an expansive understanding of this requirement. "[A]n applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success," even if the materials are not strictly "necessary for the party to prevail in the foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015). The applicant need not show that the information sought will be admissible in the foreign proceeding, *see Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012), or even discoverable pursuant to the laws of the country in which the foreign proceeding is underway, *see Intel*, 542 U.S. at 260–62.

The second and third *Intel* factors are similar in that they direct the Court to consider how the materials being sought will be used in the underlying proceedings. The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In analyzing a foreign court's "receptivity" to this Court's assistance, the key question is whether the foreign tribunal "would reject evidence obtained with the aid of section 1782." *In re Saul Klein*, No. 23-MC-211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, No. 24-228-CV, 2025 WL 560105 (2d Cir. Feb. 20, 2025) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). The third *Intel* factor asks whether the application "conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "[P]roof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain

4

materials, rather than as rules that *fail to facilitate* investigation of claims . . . ." *Mees*, 793 F.3d at 303 n.20 (internal quotation marks omitted) (emphasis in original).

At bottom, the Intervenors' arguments as to the second statutory requirement and the second and third *Intel* factors are the same. They contend that Brazilian law forecloses the Applicants from presenting information about Mr. Alexandre Beldi's non-Brazil-based assets in the Probate Proceeding, and, therefore, that (1) the requested materials are not "for use" in the Probate Proceeding, 28 U.S.C. § 1782(a); (2) Brazilian courts will not be "receptiv[e]" to this Court's decision to grant the application, *Intel*, 542 U.S. at 264; and (3) the application is "an attempt to circumvent" Brazilian "proof-gathering restrictions" that bar discovery of irrelevant materials located abroad, *id.* at 265.

The Court approaches the Intervenors' argument, which relies on a nuanced analysis of Brazilian law, with caution. Section 1782 was enacted with the "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). "[I]t is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." *Euromepa*, 51 F.3d at 1099. Accordingly, "absent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782, . . . a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect." *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997) (citation and internal quotation marks omitted); *see In re Saul Klein*, 2023 WL 8827847, at *11 (applying the

5

"authoritative proof" standard to the second *Intel* factor); *Mees*, 793 F.3d at 303 & n.20 (applying the same standard to the third *Intel* factor).

The evidence that the Intervenors have offered for the proposition that the Applicants will be unable to use the materials they seek here in the Probate Proceeding is in no way "authoritative." *Id*. As an initial matter, the Applicants and the Intervenors have presented conflicting testimony on the subject from Brazilian legal experts. The Applicants' experts assert that Brazilian law requires the Probate Court to maintain an inventory of all *inter vivos* gifts and assets located abroad, *see* Godoy Decl., Dkt. 29 ¶¶ 27–28, 31, 39-40, 47–48, 53, and that the inventory for Mr. Alexandre Beldi may be incomplete, *see* Silva Vieira Decl., Dkt. 3 ¶¶ 16–18, 24. The Intervenors' expert, Alessandro Lima Amaral, asserts the opposite: that "the Probate Court has no jurisdiction to rule on assets that are outside of Brazil and, therefore, the information from international financial institutions are [*sic*] irrelevant to the Probate Proceeding."[2] Amaral Decl., Dkt. 11 ¶ 43. Parsing these competing assertions would require the Court to act as referee in "a battle-by-affidavit of international legal experts." *Euromepa*, 51 F.3d at 1099. The Second Circuit has warned district judges against doing precisely that. *Id*.

To the extent the Intervenors cite specific Brazilian legal principles to support their argument, they are far from authoritative on the question of whether the discovery sought by the Applicants might be usable in the Probate Proceedings. For example, Mr. Amaral claims that Brazilian law "clearly establishes that the law applicable to the deceased's assets located outside

---

[2]     Even if the Court were to take Mr. Amaral's declaration at face value, it addresses only half the rationale behind the Applicants' request. As the R&R notes, Mr. Amaral admits that "the Probate Proceeding is pending to account for the donations Mr. Alexandre Beldi's heirs received until the date of his death." Amaral Decl. ¶ 10. Accordingly, even if it is true that the Brazilian Probate Court is not authorized "to investigate assets located outside of the Brazilian jurisdiction" for purposes of dividing his estate, *id.*, there is nothing in Mr. Amaral's declaration that suggests that evidence of *inter vivos* gifts from Mr. Alexandre Beldi to certain of his heirs would be excluded from the Probate Proceeding merely because they were funded with money that was held in non-Brazilian financial institutions.

6

of the Brazilian territory is the law where such assets are located" and, thus, that Brazilian courts have no jurisdiction over such assets. Amaral Decl. ¶ 71. The Court has no way of knowing whether this assertion, which is not supported by a citation to anything in the record, accurately summarizes Brazilian law. But even if it is true that Brazilian courts cannot exercise jurisdiction over non-Brazilian assets, that would not necessarily mean that the Brazilian Probate Court cannot consider information about such assets when it determines how best to divide the portions of the estate over which it does have jurisdiction.

Mr. Amaral's declaration is equally imprecise in its analysis of decisions by the Brazilian Supreme Court and the Superior Court of Justice (the "STJ," Brazil's highest court for non-constitutional matters) that purportedly stand for the proposition that "in matters of probate proceeding, it is not appropriate for Brazilian courts to take any measures aimed at the identification and/or division of assets located abroad." *Id.* ¶ 78. Again, the Court has no way of knowing whether Mr. Amaral's descriptions of the Brazilian courts' decisions are reliable, particularly considering that they are not supported by any citations to the record, the provenance of the translated quotations he provides is unknown, and the summaries and excerpted quotations he provides are devoid of context. *See id.* ¶¶ 78–84 & nn.17–21. Simply put, the Intervenors invite the Court to draw sweeping conclusions about Brazilian law on the basis of their expert's self-serving, conclusory characterizations. The Court declines to do so. *See Euromepa*, 51 F.3d at 1099–100 ("[W]e do not read [section 1782] to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute."); *Brandi-Dohrn*, 673 F.3d at 82 ("[R]equiring a district court to apply the admissibility

laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'" (quoting *Intel*, 542 U.S. at 263)).

Looking beyond their assessments of Brazilian law generally and toward their analyses of Brazillian courts' decisions in this dispute specifically, the Intervenors still fall far short of presenting authoritative proof that the discovery sought by the Applicants would not be permitted in the Probate Proceeding. The Intervenors' central argument is that Brazilian courts have "repeatedly and for years rejected Applicants' request for authority to seek discovery from U.S. financial institutions," supposedly because such evidence "is not relevant to the Brazilian Probate Proceeding." Objs. at 18. That is, to put it mildly, a selective characterization. As discussed in detail in the R&R, *see* R&R at 3–6, the question of whether the Probate Court may issue *oficios* seeking information from U.S.-based financial institutions in connection with the Probate Proceeding is one that has been decided and re-decided by the Probate Court, the Court of Appeals, and the STJ many times over the past fifteen years. The Probate Court first granted the Applicants' request to issue *oficios* to obtain materials from foreign financial institutions in December 2010. Aramal Decl. ¶ 37. The Probate Court rescinded the *oficios* that same month, *id.* ¶ 39, and denied a request to reissue them in April 2011, *id.* ¶¶ 44–45. The Court of Appeals then reversed the Probate Court and directed it to reissue the *oficios* in July 2011. *Id.* ¶ 45–47. Then, in October 2011, the Court of Appeals, at the Intervenors' request, changed course again and directed the Probate Court to cancel the recently-reissued *oficios*. *Id.* ¶ 49. The Court of Appeals reiterated that decision in October 2012 and May 2015 orders. *Id.* ¶¶ 50, 52–53. In September 2024, however, the STJ reversed the Court of Appeals. *Id.* ¶ 59. That decision is currently pending appeal by the Intervenors. *Id.* ¶¶ 54, 62–63.

8

The most recent September 2024 order from the STJ highlights the extent to which the relevance of the materials sought through this application remains an open question. The Intervenors stress that the STJ's order "is not final, did not reissue the *ofícios*, nor did it find that discovery from U.S. financial institutions is relevant to the Brazilian Probate Proceeding." Objs. at 18. Even assuming all those things are true, the fact remains that the September 2024 order explicitly provides that "the jurisdiction of the Brazilian courts does not exclude the possibility of proceeding with the distribution of assets located abroad, which gives rise to the possibility of sending official letters to the [foreign] financial institution, for the purpose of clarifying the assets left by the deceased." Objs Ex. F, Dkt. 56-6 at 3.[3] That assessment is directly at odds with Mr. Amaral's conclusory assertions that the Brazilian courts lack such jurisdiction. *See* Amaral Decl. ¶¶ 70–77. The September 2024 STJ opinion, therefore, demonstrates — at a minimum — that there is no authoritative view that the Brazilian Courts would reject evidence obtained via the discovery that the Applicants seek.[4]

As an alternative to denying the Section 1782 application outright, the Intervenors argue that the Court should hold the application in abeyance until the STJ rules on the Intervenors' appeal of the September 2024 order. They argue that decision "will give clear direction on whether the Brazilian Probate Proceeding is receptive to discovery from U.S. financial institutions." Objs. at 18. The Intervenors' proposed course of action — for which they cite no supporting legal authority — gets the law precisely backwards. It is *because* the law in Brazil is ambiguous that Section 1782 relief should not be delayed. The Second Circuit has instructed

---

[3]     ECF-provided pagination.

[4]     Indeed, the Intervenors concede as much in their Objections when they note that the September 2024 STJ opinion did not reissue the *ofícios* but rather "returned [the case] to the lower court so that it may rule on whether discovery from financial institutions abroad may be relevant to the Brazilian Probate Proceeding." Objs. at 7. In other words, the usefulness of the discovery that the Applicants now seek is not foreclosed by authoritative Brazilian law; rather, it is a live issue that, if the STJ's opinion stands, can and will be litigated in the Probate Proceeding.

that courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782" as a reason to deny relief. *Euromepa*, 51 F.3d at 1100. "Absent this type of clear directive, . . . a district court's ruling should be informed by section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Id.*; *see also In re Application of Metallgesellschaft AG*, 121 F.3d at 80. Needless to say, it would hardly be efficacious to delay resolving this Motion until the STJ weighs in on yet another appeal (which, as the Intervenors repeatedly observe, will not resolve the dispute over the relevance of the requested evidence but will merely remand that question to the Probate Court for yet more litigation).

The Intervenors' argument that the Court should hold the application in abeyance out of "deference to the Brazilian courts" is likewise unpersuasive. Objs. at 18. Nothing in the R&R or this Opinion expresses any view on the correct interpretation of Brazilian law, and Brazilian courts are free to disregard, or exclude altogether, any evidence they deem irrelevant. *See Brandi-Dohrn*, 673 F.3d at 82 ("[W]e need not be concerned with issues of parity because the ultimate admissibility of the evidence is determined by the foreign tribunal.").

In sum, because there is no authoritative proof that Brazilian courts would reject the materials that the Applicants seek to obtain via their request, the Court rejects the Intervenors' objections to Magistrate Judge Figueredo's recommendation that this Court find that the second statutory requirement has been satisfied and that the second and third *Intel* factors weigh in favor of granting the application.

## B.    The First *Intel* Factor Favors Granting the Application

The first *Intel* factor provides that "when the person from whom discovery is sought is a participant [in the underlying proceedings abroad] . . . the need for § 1782(a) aid generally is not

as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Given that none of the financial institutions targeted by the Applicants' subpoenas is a party to the Probate Proceeding, this factor clearly favors granting the application.

Nevertheless, the Intervenors argue that the "critical" inquiry of the first *Intel* factor is not whether the target of the subpoena is a party but "whether the foreign tribunal can obtain the discovery sought in the Section 1782 application."  Objs. at 24.  The Intervenors' counterintuitive reading of the plain text of *Intel* relies on a strained interpretation of another case in this District, *In re Saul Klein*.  That case, like this one, concerned a Section 1782 application to obtain records from various U.S. financial institutions in connection with a Brazilian probate proceeding.  2023 WL 8827847, at *11.  Unlike here, however, the materials sought in *Klein* were bank records that belonged to the parties; thus, even though the financial institutions themselves were non-parties, the request was for records that the parties "ha[d] access to and could access were such materials sought of them in a Brazilian proceeding."  *Id*. Under those circumstances, the court construed the request as being, "in substance," for party documents.  *Id.*  That is not the situation here; the records sought pertain to over thirty entities and individuals, some of whom are parties to the Brazilian proceeding and some of whom are not.  *See, e.g.*, Shapiro Decl. Ex. C, Dkt. 2-3 at 2.

Even to the extent the subpoenas do seek information about the Intervenors, it is not clear — and the Intervenors have not asserted — that the information requested in the subpoenas would be equally accessible to the Intervenors and the financial institutions.  *See In re Klein*, 2023 WL 8827847, at *11 (first *Intel* factor disfavors Section 1782 relief where the application sought documents like "bank statements," and the parties "do[] not dispute that, to the extent the

parties have accounts at the U.S. financial institutions he has subpoenaed, they, as account holders, have access to and could access them were such materials sought of them in a Brazilian proceeding"); *see also In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, No. 24-MC-119 (LJL), 2024 WL 4169550, at *12 (S.D.N.Y. Sept. 12, 2024) (first *Intel* factor disfavors Section 1782 relief where the "Applicants do not dispute that the vast majority of the information sought from Morgan Stanley is the same as could be obtained from [the parties to the underlying proceedings] in Brazilian court"). The fact that the subpoenas seek data about all transactions made "for the benefit of, on the behalf of, or at the request of" the individuals and entities about whom records are sought, as opposed to just individual account data, suggests that the financial institutions may be uniquely equipped to locate responsive records. *E.g.*, Shapiro Decl. Ex. C at 6. Accordingly, the Court agrees with Magistrate Judge Figueredo that the first *Intel* factor favors granting the Application because the subpoenaed financial institutions are not participants in nor parties to the Brazilian Probate Proceeding.

### C.     The Fourth *Intel* Factor Favors Granting the Application

The fourth *Intel* factor directs courts to "assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Rule 26, in turn, requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Intervenors argue that the Applicants' proposed subpoenas are "unduly intrusive" and a "fishing expedition" in large part because they seek "all documents and communications concerning any financial transaction relating to 35 entities and 5 individuals—without any time limitation." Objs. at 20–21. At the outset, the Court notes that the Intervenors are ill-situated to bring this argument. It is the financial institutions, not the Intervenors, who are the targets of the

Applicants' subpoenas and who will bear the burden and expense of producing the requested discovery. That none of the subpoenaed institutions has moved to quash strongly suggests that the Intervenors' complaints about breadth and burden are overblown. *See In re Aso*, No. 19 MC 190 (JGK) (JLC), 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) ("It appears disingenuous for Takeo to protest the burden of the requests *addressed to the subpoena targets* when none of them have intervened (though they have all been served with the Application.)" (emphasis in original)); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *7 (S.D.N.Y. July 12, 2018) ("The [subpoena targets] have not objected to this application on the grounds that the requests are overly broad and/or intrusive, which is strong support for a finding in favor of the petitioners on [the fourth *Intel*] factor.").

Even if the Intervenors were the appropriate party to challenge the subpoenas' scope, quashing the subpoenas altogether would be inappropriate. The Intervenors conceded at oral argument before Magistrate Judge Figueredo that, although the subpoenas seek records that post-date Mr. Alexandre Beldi's death, it is nevertheless "conceivable" that those records could "shed some light on an asset transfer or gift" that occurred during his lifetime. Oct. 3, 2025, Tr., Dkt. 49 at 31:3–11. Moreover, as the R&R notes, the Applicants have conducted a forensic examination and filed an expert report explaining in detail how the subpoenaed financial institutions were identified and why they believe they are likely to have relevant information. *See* Vieira Decl. ¶¶ 10–13, 20–22; Oct. 3, 2025, Tr. at 68–69; Notice of Forensic Accounting Report, Dkt. 52 ¶¶ 16–19, 24–25, 105. If doubts remain about the appropriate scope of the subpoenas, the subpoenaed entities themselves are free to meet and confer with the Applicants to discuss narrowing the subpoenas. *See In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*, No. 22-MC-00118 (LAK), 2022 WL 17553067, at *8 (S.D.N.Y. Dec.

13

9, 2022) ("[N]othing in this opinion precludes [the subpoena target] from filing objections to the subpoena, which would permit tailoring on a per-request basis."). As it stands, however, there is no reason to conclude that the scope of the discovery sought so clearly outweighs its likely benefit that quashing the subpoenas would be appropriate.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS the R&R in full. The Motion to vacate the Court's September 23, 2024, Order granting the Section 1782 application in this action and to quash the subpoenas issued and served pursuant to that application is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 9.

Not later than **June 4, 2026**, the parties must meet and confer and file a joint letter advising the Court as to what they believe are the appropriate next steps, if any, in this matter.

**SO ORDERED.**

Date:  **May 21, 2026**
        **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**